IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MICAELA GUALDARRAMA, et al.,

Plaintiffs

v.                                         CIVIL 97-2481 (SEC) (JA)

MARIA RIVERA ORTIZ, et al.,

Defendants

## OPINION AND ORDER

Defendants Superintendent Pedro Toledo and Sergeant Walbert García filed a motion for summary judgment on May 19, 2000. (Docket No. 52.) Plaintiffs filed a reply on June 9, 2000. (Docket No. 59.) On June 30, 2000, the defendants' surreply was received. (Docket No. 62.)

### I. Facts

On October 8, 1996, at 7:30 p.m., officers from the Tactical Operations Unit of the Puerto Rico Police Department, under the direct supervision of co-defendant Sergeant Walbert García and pursuant to orders from Superintendent Pedro Toledo, were in the middle of a so-called "take-over" or "invasion" at the "Jardines de Berwind" housing project's parking lot. Co-plaintiffs Micaela Gualdarrama and her daughter Reina Roldán Gualdarrama, a minor, allege that as they were peacefully and lawfully leaving a relative's

CIVIL 97-2481 (SEC) (JA)                2

apartment, co-defendant officers Víctor Marrero-Barrios and María Rivera Ortiz, using excessive force and without probable cause, confronted, assaulted, and subsequently arrested them.

As the plaintiffs were walking out the hallway, co-defendant Víctor Marrero-Barrios forcefully shoved plaintiff Reina Roldán Gualdarrama against the wall, striking her in the abdomen with his nightstick.  When the plaintiffs inquired as to the authority of the defendant officers and as to the reasons underlying the officers' actions, co-defendant officer María Rivera Ortiz slammed Reina Roldán against an iron gate, twisting her arm. When Reina's mother, Micaela Gualdarrama, informed the police about Reina's minor status, officer Marrero-Barrios began to assault her by hitting her in the back with his baton.  Micaela Gualdarrama was then dropped to the floor.  Both plaintiffs allege they were callously beaten by both Marrero-Barrios and Rivera Ortiz.  Plaintiffs maintain they neither provoked said assault, nor  consented to it.  Defendants seized and handcuffed Reina Roldán Gualdarrama and began to take her to a patrol car.

Plaintiffs claim that when Micaela Gualdarrama complained to the police officer in charge of the operation at the housing project, presumably Sergeant Walbert García, regarding the beating and subsequent arrest of her daughter, he willfully ignored her complaint.  Plaintiffs claim that his deliberate indifference typifies the "deliberate indifference to civil rights violations promoted by the Police Department policy of

CIVIL 97-2481 (SEC) (JA)                3

residential housing projects invasions." (Docket No. 1, Complaint at 5-6, ¶ 15.) Micaela Gualdarrama was handcuffed and taken along with her daughter to the Puerta de Tierra police station, where both were kept in a cell for hours, despite needing emergency medical treatment.  Plaintiffs were finally taken to a hospital to receive emergency medical treatment at about 11:00 p.m.  Doctors found that they had both received trauma.

After receiving treatment, plaintiffs were taken before district attorney Elí J. López at the San Juan Investigations Center.  No charges were filed against them.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).[1]  The moving party always has the initial burden of showing the absence of a genuine issue concerning any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The party seeking summary judgment must make plain the basis for its motion, by identifying those portions of the pleadings, depositions, answers to

---

[1]    The relevant part of Fed.R.Civ.P. 56(c) reads:
       The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CIVIL 97-2481 (SEC) (JA)                4

interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of factually sufficient evidence to support an essential element of the non-moving party's case.[2] <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990); <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323, 327.

The burden then shifts to the non-movant to establish the existence of at least one fact issue which is both "genuine" and "material." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990); <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d at 48. Where the non-moving party will bear at trial the burden of proof of such a "genuine" and "material" fact, it must, in its response, make a sufficient showing establishing the existence of a factual dispute requiring a jury to resolve the parties' differing versions of truth at trial. <u>United States v. One Parcel of Real Property with Bldgs.</u>, 960 F.2d 200, 204 (1st Cir. 1992); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323; <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968). Failure to do so would mandate the entry of summary judgment. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322.

A factual dispute is "genuine," and precludes the granting of summary judgment, if a reasonable jury could resolve the disagreement in favor of the nonmoving party. <u>United</u>

---

[2]    The essential elements of a section 1983 claim are (1) that the defendant acted under color of state law and (2) that the defendant's conduct worked a denial of the plaintiff's constitutional and civil rights. 42 U.S.C. § 1983; <u>see</u> <u>Martínez v. Colón</u>, 54 F.3d 980, 984 (1st Cir.), <u>cert. denied</u>, 516 U.S. 987 (1995).

CIVIL 97-2481 (SEC) (JA)                 5

States v. One Parcel of Real Property with Bldgs., 960 F.2d at 204; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "material" fact is one which has the potential to change the outcome of the suit under the governing substantive law, if found favorable to the non-movant. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Martínez v. Colón, 54 F.3d at 984; United States v. One Parcel of Real Property with Bldgs., 960 F.2d at 204; Griggs-Ryan v. Smith, 904 F.2d at 115.

For the purposes of summary judgment, the court must view the entire record, including the opposing party's probative evidence, in the light most hospitable to this party, indulging all reasonable inferences in that party's favor. United States v. One Parcel of Real Property with Bldgs., 960 F.2d at 204; Griggs-Ryan v. Smith, 904 F.2d at 115. If the moving parties' submissions do not foreclose the possibility of the existence of certain facts so that the jury could find for the non-moving party, summary judgment should not to be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. As in the case of a directed verdict, if reasonable minds could differ as to the significance of the evidence, summary judgment should be denied. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-51.

III. Section 1983

Title 42 U.S.C. § 1983 reads in part as follows:

CIVIL 97-2481 (SEC) (JA)                    6

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

(1) Under Color of State Law

A defendant is considered to act under color of state law if his conduct occurs in the course of performing an actual or apparent duty of his office or if his conduct is such that he could not have acted in such a way but for the authority of his office. Martínez v. Colón, 54 F.3d at 986. Whether a police officer acts under color of state law depends on the nature and the circumstances within which the officer's conduct takes place and the relationship that conduct has to his official duties. Id. Thus, a person acts under color of state law whenever he purports to act in an official capacity or to exercise official responsibilities and effectively "abuses the position given to him by the state." Id. (quoting West v. Atkins, 487 U.S. 42, 50 (1988)). The defendants have not denied that on October 8, 1996, whatever involvement they had with the operations taking place at the "Jardines de Berwind" public housing project was pursuant to their official capacities as members of the Puerto Rico Police Department.

CIVIL 97-2481 (SEC) (JA)                    7

Defendant officers, both from the Tactical Operations Unit of the Police Department of Puerto Rico, had been previously assigned to give support to other police agents during the drug operation scheduled to take place at "Jardines de Berwind" residential project.

It is undisputed that Superintendent Pedro Toledo had the duty to establish all the rules and regulations for each specific division of the Puerto Rico Police Department and the requirements for recruiting, training, and hiring within the police force. Nor is it disputed that Superintendent Pedro Toledo had the power, right, and duty to control the manner in which the officers and employees of the Police Department carried out the objectives of their employment or that the procedures and orders regarding this particular public housing intervention, and the deliberate program and policy regarding this type of so-called "take-over" or "invasions," came from him as general orders. Defendant Toledo's Puerto Rico Police Department policy formulation and defendant Sergeant Walbert García's immediate, on-site, supervisory duties were thus undertaken under color of state law.

(2) Defendants' conduct worked a denial of rights secured by the Constitution or by federal law.

It is well established that for claims under section 1983 against supervisory personnel, liability needs to be based upon the doctrine of "supervisory liability," not upon the theory of *respondeat superior*. <u>Gutiérrez-Rodríguez v. Cartagena</u>, 882 F.2d 553, 562 (1st

CIVIL 97-2481 (SEC) (JA)                    8

Cir. 1989); see Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978). Under

the doctrine of "supervisory liability," a supervisor may be held liable for the constitutional

violations of a plaintiffs' rights by subordinates if he formulates a policy or engages in a

practice that leads to a civil rights violation or if he acts with deliberate indifference to the

constitutional rights of others. Díaz v. Díaz-Martínez, 112 F.3d 1, 4 (1st Cir. 1997); see

O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000).

Supervisory police officials who stand accused of civil rights violations under this

section may avoid liability for money damages if they can show that their conduct either

(i) did not violate, or lead to the violation, of a right "clearly established" under federal law

or (ii) that it did not lack objective legal reasonableness. See Camilo-Robles v. Hoyos, 151

F.3d 1, 5 (1st Cir. 1998), cert. denied, 525 U.S. 1105 (1999); Febus-Rodríguez v.

Betancourt-Lebrón, 14 F.3d 87, 91 (1st Cir. 1994); cf. Miller v. Kennebec County, 219 F.3d

8 (1st Cir. 2000).

(a) right "clearly established" under federal law

A right, secured by either the Constitution or federal law, has been "clearly

established" when the contours of the right are sufficiently clear so that a reasonable official

would understand that what he is doing violates that right. Camilo-Robles v. Hoyos, 151

F.3d at 5-6 n.3 (citing to Anderson v. Creighton, 483 U.S. 635, 640 (1987)); see also

County of Sacramento v. Lewis, 523 U.S. 833, 842 n.5 (1998).

CIVIL 97-2481 (SEC) (JA)                    9

Plaintiffs allege the defendant officers violated their right to be free from unreasonable searches and seizures (and by extension, unjustified arrest and detention), "clearly established" in the jurisprudence of the Fourteenth Amendment, which constrains state action through the Fourth Amendment. They also allege violations of their right to due process of law (and, by extension, their right to be free from police brutality), which has been "clearly established" also under the Fourteenth Amendment, constraining state action through the Fifth Amendment.

In determining whether a supervisor claiming qualified immunity should be held liable under section 1983, the inquiry as to the "clearly established" prong must show that (a) the subordinate's actions violated such a "clearly established" constitutional right, and (b) it was clearly established that the supervisor would be liable for constitutional violations perpetrated by such subordinates in that context. Camilo-Robles v. Hoyos, 151 F.3d at 6. Here, it has already been demonstrated that the plaintiffs' claims allege the violations of "clearly established" Fourth, Fifth, and Fourteenth Amendment constitutional rights. Thus, the remainder of this section will focus on the second prong.

While notice may be a relevant consideration in determining supervisory liability, supervisory liability does not require a showing that the supervisor had actual knowledge of the potential offending behavior. Id. at 7. A supervisor may be held liable for the foreseeable consequences of such conduct if he would have known but for his "deliberate

CIVIL 97-2481 (SEC) (JA)                    10

indifference" or willful blindness. Id. (quoting Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 582 (1ˢᵗ Cir. 1994). Thus, precedent has clearly established that a police supervisor who is "deliberately indifferent" or, alternatively, "recklessly or callously indifferent"[3] may be held liable for the constitutional violations of subordinates. Díaz v. Díaz-Martínez, 112 F.2d at 4.

To demonstrate "deliberate indifference," a plaintiff must show causation by establishing (1) a grave risk of harm, (2) the defendant's knowledge, actual or constructive, of that risk, and (3) his failure to take easily available measures to address the risk. Camilo-Robles v. Hoyos, 151 F.3d at 7; see also Manarite v. City of Spingfield, 957 F.2d 953, 956 (1ˢᵗ Cir. 1992).

An example of the application of the "deliberate indifference" standard is Díaz v. Díaz-Martínez, a case involving the Puerto Rico Police Department superintendent and, inter alia, another incident occurring during a police occupation of a residential housing

---

[3] An official displays reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights. Id. (quoting Germany v. Vance, 868 F.2d 9, 18 (1ˢᵗ Cir. 1989)). With respect to claims of supervisory liability based on improper police training—as those presented in plaintiff Gualdarrama's complaint (Docket No. 1, Complaint at 4, ¶ 10)—, the First Circuit Court of Appeals has determined that there is no significant determinative difference between the standard of "gross negligence amounting to deliberate indifference" and the alternative standard of "reckless or callous indifference." See Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d at 92; Gutiérrez-Rodríguez v. Cartagena, 882 F.2d at 562.

CIVIL 97-2481 (SEC) (JA)                11

project conducted pursuant to his deliberate action policy and under his supervision. There, the court held that it was "clearly established" that a reasonable police official charged with the superintendent's duties would have understood that he could be held liable for failing to identify and actively prevent potentially and demonstrably dangerous police officers' behavior. See Díaz v. Díaz-Martínez, 112 F.2d at 4. It thus upheld the district court's denial of the superintendent's petition for summary judgment, finding that there was a genuine issue of fact concerning whether a police official's supervision of the promulgation of all orders, rules, policies, instruction and regulations was so deficient as to constitute "deliberate indifference." Id. at 5.

In terms of the "grave risk of harm" prong, these operations in public housing projects have been characterized elsewhere as high-tension situations in high-crime areas. Id. at 2. The plaintiffs argue that, under such circumstances, defendant Toledo knew or should have known that his failure to assign properly trained police officers for the intervention and to take other relevant appropriate and available measures, could foreseeable result in violations of the constitutional and civil rights of the housing project population. They argue similarly in terms of defendant García's conduct.

In terms of defendant García's knowledge, actual or constructive, of the situation and thus, in terms of his opportunity to intervene, plaintiffs' complaint alleges:

CIVIL 97-2481 (SEC) (JA)                    12

> That [when] Micaela Gualdarrama went to complaint to the police officer in charge of the housing area police invasion, about the abuse and arrest of Reina Roldán Gualdarrama, he did not pay attention to her. Showing deliberate indifference to civil rights violations promoted by the Police Department policy of residential housing project invasions.
>
> That instead, Micaela Gualdarrama was handcuffed and taken along with her daughter to a police station in Puerta de Tierra where they were kept in a cell for hours, even though they were in need of medical emergency treatment.
>
> That almost at 11:00 PM, they were finally taken to the Hospital to receive treatment. Multiple body trauma was found on their chest, arms, and legs; ribs x-rays were ordered for possible fractures and analgesics prescribed."

Docket No. 1, Complaint at 5-6, ¶ 15-17.

Sergeant García argues that "[n]owhere in the complaint, or anywhere else, do plaintiffs allege that defendant García committed any act against them. Nowhere on the record do plaintiffs state which acts did defendant García do that could constitute a claim against him." (Docket No. 52, Defendants' Motion for Summary Judgment at 4.) Plaintiffs have clearly alleged "[t]hat [when] Micaela Gualdarrama went to complaint to the police officer in charge of the housing area police invasion, about the abuse and arrest of Reina Roldán Gualdarrama, he did not pay attention to her. Showing deliberate indifference to civil rights violations promoted by the Police Department policy of residential housing project invasions [sic]." (Docket No. 1, Complaint at 5-6, ¶ 15.)

CIVIL 97-2481 (SEC) (JA)                13

Sergeant Walbert García was in fact one of the sergeants in charge of said operation, but he was not the only one. (Docket No. 62, Defendants' Additional Statement of Facts at 2.) Although he is the defendant officers' immediate supervisor during the drug intervention (Plaintiffs' Exhibit I, at 61, 63), there is no evidence that plaintiff Micaela Gualdarrama presented her complaint to him. Thus, this defendant alleges he had no notice or knowledge of the situation and of the risk and possibility of the constitutional and civil rights violations, if any, of which the plaintiffs have alleged. However, as stated above, actual notice is not required.

As for defendant Toledo, there is no showing that he was personally involved in the incidents, nor is it possible to conclude from the evidence on record that he was at all present on October 8, 1996, at 7:30 p.m., at the "Jardines de Berwind" housing project, during this particular implementation of the Puerto Rico Police Department's action policy of residential project "invasions." That he would have had any kind of notice or indication as to a pattern of civil rights violations pursuant to this type of intervention and potentially related to his failure to ensure the proper training of the defendant officers is only found in the record on the second page of Exhibit X, Sworn Statement by Walbert García. Therein, defendant García alludes to alleged commentaries made by prosecutor Elí J. López to the extent that it was common knowledge, due to press coverage, that police interventions of public housing projects invariably lead to rampant civil rights violations,

CIVIL 97-2481 (SEC) (JA)                14

widely sanctioned by Superintendent Toledo.  These statements being hearsay, and not falling within any exception to the hearing rule, are thus not admissible as probative evidence against defendant Toledo.  Neither have plaintiffs offered any evidence supporting their claim that defendant officers María Rivera Ortiz and Víctor Marrero Barrios were demonstrably dangerous nor that, previous to this incident, either Superintendent Toledo or Sergeant García could have reasonably foreseen these officers would be involved in an incident such as the one these plaintiffs have alleged.  In a section 1983 action, the plaintiff must show that the defendant supervisor had the power and authority to alleviate the alleged civil rights violations.  See Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d at 582. Such a connection may include knowing sanction, tacit approval or acquiescence, or purposeful disregard of the subordinate's behavior which lead to the civil rights violations. See Camilo-Robles v. Hoyos, 151 F.3d at 7; Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d at 582.  Defendant Toledo has obviously been vested with the power and authority to influence the Puerto Rico Police Department's policy and procedures.  He is in charge of promulgating all orders, rules, policies, instruction and regulations of the department including implementing the deliberate program or policy for the invasion of residential housing projects in Puerto Rico.  Regarding defendant García, it is apparent that if and when his subordinates, co-defendant officers María Rivera Ortiz and Víctor Marrero-

CIVIL 97-2481 (SEC) (JA)                 15

Barrios, allegedly violated the plaintiffs' civil rights, defendant García, being on notice of the situation, failed to take easily available measures to address the situation.

    (b) objective legal reasonableness

    By definition, the defendants' claims of qualified immunity must be based either on the theory that the asserted right is not clearly established, or on the theory that his conduct satisfied the test of "objective legal reasonableness." Camilo-Robles v. Hoyos, 151 F.3d at 78; see Roldán-Plumey v. Cerezo-Suárez, 115 F.3d 58, 65 (1st Cir. 1997). The defendant must show that, under the circumstances, he could not have reasonably understood that his conduct jeopardized the plaintiffs' constitutional and civil rights. Camilo-Robles v. Hoyos, 151 F.3d at 7.

    In Camilo-Robles, the First Circuit Court of Appeals reviewed the district court's denial of the defendants' motions for summary judgment, in a suit against, among others, supervisory police officials, including the Puerto Rico Police Department Superintendent, Pedro Toledo. It held that the lower court had properly decided that police officials were not entitled to qualified immunity. Id. at 5. It based this holding, at least in part, on the fact that the defendant police officials had the authority and responsibility for supervising, training, instructing, disciplining, controlling and restricting their subordinates' conduct. Camilo-Robles v. Hoyos, 112 F.3d at 12-13.

CIVIL 97-2481 (SEC) (JA)                    16

Viewed in this light, plaintiffs' contentions in the present case are not baseless. Indulging reasonable pro-plaintiff inferences, as for the purpose of a summary judgment motion, under the current set of facts and in view of the specific factual disputes in the record, it could be supportably concluded that, within the circumstances, the defendants could have reasonably understood that their conduct could jeopardized the plaintiffs' constitutional and civil rights, that they had the authority to prevent such violations, and that they failed to take obvious steps within their power to reduce or eliminate that risk. Thus, if a causal connection between their indifference and the alleged violations could be established, the defendants' conduct could be found to have not been objectively reasonable, and thus qualified immunity would not attach.

<u>Causation</u>

To satisfy the second element in a section 1983 based on supervisory liability, a claimant must establish that a defendant supervisor's conduct effected a denial of the plaintiff's constitutional and civil rights by showing causation based on basic tort notions. <u>Rodríguez-Cirilo v. García</u>, 115 F.3d 50, 52 (1st Cir. 1997). In the present claims against defendants Pedro Toledo and Walbert García, the appropriate principle under Puerto Rico tort law would be "causalidad adecuada," similar to the concept of "proximate cause," which permits the assignment of liability if the resulting civil rights violations were reasonably foreseeable consequences of the defendants' actions. P.R. Laws Ann. tit. 31, §

CIVIL 97-2481 (SEC) (JA)                17

5141, art. 1802[4]; P.R. Laws Ann. tit. 32, § 5142, art. 1803[5]; see also Rodríguez-Cirilo v. García, 115 F.3d at 52 n.4.

Accordingly, if plaintiffs can establish that the defendants' conduct was the proximate cause of the subsequent constitutional and civil rights violations, then plaintiffs may be able to successfully litigate a section 1983 suit.

The concept of proximate cause restricts tort liability to "those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." W. Page Keeton et al., Prosser & Keeton on the Laws of Torts § 41,

---

[4]    P.R. Laws Ann. tit. 31, § 5141 reads thus:
       A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity.

[5]    The relevant portions of P.R. Laws Ann. tit. 31, § 5142 read thus:
       The obligation imposed by section 5141 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.
       . . .
       The Commonwealth is liable in this sense under the same circumstances and conditions as those under which a private citizen would be liable.
       . . .
       The liability referred to in this section shall cease when the liable persons mentioned therein prove that they employed all the diligence of a good father of a family to preclude the damage.

CIVIL 97-2481 (SEC) (JA)                18

at 264 (5th ed. 1984).  Two questions must be answered to determine if a defendant's conduct "caused" a plaintiff's injury:  (i) whether there was a sufficient causal connection between the conduct and the outcome, and (ii) whether the circumstances and causal relationship are such that the imposition of liability on the defendant was foreseeable.  See, e.g., Irvine v. Murad Skin Research Lab., Inc., 194 F.3d 313, 321-22 (1st Cir. 1999); Grajales-Romero v. American Airlines, Inc., 194 F.3d 288, 296-97 (1st Cir. 1999); López v. Nutrimix Feed Co., 27 F. Supp.2d 292, 297 (D.P.R. 1998); Smith v. Williams Hospitality Management Corp., 950 F. Supp. 440, 446 (D.P.R. 1997).

If the harm that occurred, pursuant to the subordinate officers' alleged behavior, was indeed foreseeable, then it must still be determined whether the conduct of defendants Toledo and García was a "substantial factor" sufficiently linked in the chain of causation to the alleged constitutional and civil rights violations.

In terms of foreseeability, plaintiffs' complaint alleges that, on October 8, 1996, the defendants abdicated their "power, right, and duty to control the manner in which the officers and employees of the Police Department . . . carried out the objectives of their employment, in particular the deliberate program or policy for the invasion of residential housing projects in Puerto Rico."  (Docket No. 1, Complaint at 4, ¶ 11.)  This conduct, plaintiffs argue, was a reflection of their "deliberate indifference" as to the "known and obvious consequences in terms of civil rights violations" of the "deliberate action plan of

CIVIL 97-2481 (SEC) (JA)              19

the Police Force and following a government policy of invading residential housing project[s]." (Docket No. 1, Complaint at 2, ¶ 3.)

If this court had been presented with admissible evidence that the defendant was well aware that a failure to properly or additionally train the defendant officers, then his "deliberate indifference" to this situation and to its potential, predictable, and foreseeable consequences could establish sufficient causal connection between his conduct and the outcome. But no such admissible evidence has been here presented. Defendant officer's alleged subsequent violations of other citizens' constitutional and civil rights represent no probative evidence as to his awareness of the situation at "Jardines de Berwind" public housing project during the October 8, 1996 so-called invasion. Furthermore, even if he had been, a single incident by itself is generally insufficient basis for inferring the existence of a police policy or custom, as required under section 1983. See, e.g., Board of County Com'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 410 (1997); Oklahoma City v. Tuttle, 471 U.S. 808, 821 (1985); Soto v. Carrasquillo, 878 F. Supp. 324, 328 (D.P.R. 1995); Ramírez de Arellano v. Municipality of San Juan, 685 F. Supp. 309, 312 (D.P.R. 1988). The evidence of record concerning this particular case does not support the finding of an ongoing pattern of the Superintendent's deliberate indifference.

Based on the affidavits and other supporting documents presented as part of the plaintiffs' reply to the defendants' motion for summary judgment, defendant García's

CIVIL 97-2481 (SEC) (JA)          20

actions and omissions, as stated in the complaint, (Docket No. 1, at 5-6, ¶ 15-17), could

be properly found at trial to have been a proximate cause of the alleged violations and

injuries since these consequences were not unforeseeable, too remote in time, or too

disconnected from the acts and omissions to impose liability.  Police officers, however, have

a wide zone of protection from section 1983 liability for use of force when they are called

upon to make split second judgments in tense, uncertain, and rapidly evolving

circumstances.  Méndez Marrero v. Toledo, 968 F. Supp. 27, 37 (D.P.R. 1997); see also

Wilson v. Layne, 526 U.S. 603, 609 (1999).  For the purposes of summary judgment

against defendant Sergeant Walbert García, plaintiffs have failed to present evidence which

would sufficiently refute that this zone of protection should not cover that defendant

against liability.  In terms of defendant Superintendent Pedro Toledo, they have further

failed to positively link his failure to ensure proper training of police officers or to his

alleged deliberate indifference in promulgating the program and policy of so-called "take-

over" or invasions of residential housing projects to this particular incident.

Conclusion

      The plaintiffs in this case will bear at trial the burden of proof as to the deprivation

of their constitutional and civil rights by the defendants.  Tatro v. Kervin, 41 F.3d 9, 14

(1ˢᵗ Cir. 1994); Guzmán-Rosa v. de Alba, 671 F. Supp. 882, 884 (D.P.R. 1987).  Plaintiffs

have been able to establish that on October 8, 1996 at 7:30 p.m., at the "Jardines de

AO 72
(Rev. 8/82)

CIVIL 97-2481 (SEC) (JA)                21

Berwind" public housing project, whatever the defendants' involvement in the so-called "take-over" or invasion of this location was, it was undertaken under color of state law. For the purpose of this motion, whether or not the defendant officer's conduct violated any of the plaintiffs' "clearly established rights" would only be dispositive if the plaintiffs could satisfy the elements of supervisory liability. Plaintiffs have properly alleged violations of "clearly established" federal rights, but they have failed to satisfy the necessary prongs for supervisory liability in a section 1983 suit. Namely, they have not been able to establish sufficient causation to determine that defendant Toledo's and García's conduct lead to these alleged violations or that such conduct lacked legal reasonableness. The plaintiffs have offered no admissible evidence, beyond their own conclusory allegations, to support their claims that these particular defendants acted deliberately, recklessly, or callously indifferent to the plaintiffs' rights. Neither have the plaintiffs offered evidence that the defendants could have known or reasonably foreseen that police officers María Rivera Ortiz and Víctor Marrero Barrios would ever use excessive force, if indeed they did; that these officers should have been additionally and especially trained for this situation; or that their training as of that date was in fact deficient.

Absent such evidence, the plaintiffs cannot successfully claim that the conduct of defendants Toledo and García as supervisory police officials either (i) lead to the violation of a "right clearly established" under federal law or (ii) that it lacked objective legal

CIVIL 97-2481 (SEC) (JA)                    22

reasonableness.   Moreover, in view of the wide zone of protection from section 1983

liability afforded police officers for use of force when they are called upon to make split

second judgments in tense, uncertain, and rapidly evolving circumstances, the motion for

summary judgment as to both Sergeant Walbert García and Superintendent Pedro Toledo,

is hereby GRANTED and the complaint is dismissed as to them.

The Clerk is directed to enter judgment dismissing the complaint.

In San Juan, Puerto Rico, this 24th day of August, 2000.

JUSTO ARENAS
United States Magistrate Judge