IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MICAELA GUALDARRAMA, per se,
VÍCTOR ROLDÁN MORALES, per se,
and both representing minor REINA
ROLDÁN GUALDARRAMA,

Plaintiffs

v.                                                    CIVIL 97-2481(SEC) (JA)

MARÍA RIVERA ORTIZ, VÍCTOR
MARRERO BARRIOS; WALBERT
GARCÍA; PEDRO TOLEDO; JOHN
DOE and RICHARD ROE,

Defendants

### ORDER

On March 27, 2001, defendant Pedro Toledo, former Superintendent of the Puerto Rico Police Department, filed a "Motion Requesting Protective Order" claiming protection from supervisory liability under the "qualified immunity" doctrine. (Docket No. 90.) On April 4, 2001, plaintiffs filed their "Reply to Motion for Protective Order for Pedro Toledo." (Docket No. 93.) The defendant's motion is hereby denied, based on the court's rejection of defendant Toledo's qualified immunity defense.

Title 42 U.S.C. § 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Whether a police officer acts "under color of state law" depends upon the nature and the circumstances within which the officer's conduct takes place and the relationship that



CIVIL 97-2481 (SEC) (JA)          2

conduct has to his official duties. Martínez v. Colón, 54 F.3d 980, 986 (1st Cir.), cert. denied, 516 U.S. 987 (1995). Thus, an officer violates 42 U.S.C. § 1983 whenever he purports to act in an official capacity or to exercise official responsibilities and effectively "abuses the position given to him by the state." Id. (quoting West v. Atkins, 487 U.S. 42, 50 (1988)).

A) Supervisory liability

For claims under section 1983 against supervisory personnel, liability needs to be based upon the doctrine of "supervisory liability." Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); see Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978). Under this doctrine, a supervisor may be held liable for the constitutional violations of a plaintiffs' rights by subordinates if he formulates a policy or engages in a practice that leads to a civil rights violation or if he acts with deliberate indifference to the constitutional rights of others. Díaz v. Díaz-Martínez, 112 F.3d 1, 4 (1st Cir. 1997).

At the time of the alleged incidents, defendant Toledo had been unquestionably vested with the power and authority to formulate and influence the Puerto Rico Police Department's policies and procedures. He was in charge of promulgating all orders, rules, policies, instruction and regulations of the department including implementing the deliberate program or policy for the drug interventions carried out in residential housing projects throughout the island. Defendant Toledo thus had some bearing on the police intervention in question and to any course of action undertaken therein.

B) Qualified immunity

Under the "qualified immunity" doctrine, a supervisory police official who stands accused of civil rights violations under this section may, however, avoid liability for money damages if he can show that under the circumstances, he could not have reasonably understood that his conduct jeopardized the plaintiffs' constitutional and civil rights.

Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998), cert. denied, 525 U.S. 1105 (1999). For this purpose, the defendant must show that his conduct either (i) did not violate, or lead to the violation, of a right "clearly established" under federal law or (ii) that it did not lack objective legal reasonableness. See id. at 5; Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 91 (1st Cir. 1994).

(i) "Clearly established" right

As to the first part of this analysis, plaintiffs' claims allege the violations of "clearly established" Fourth, Fifth, and Fourteenth Amendments constitutional rights. Plaintiffs allege the defendant officers violated their right to be free from unreasonable searches and seizures (and by extension, unjustified and false arrest or detention), "clearly established" in the jurisprudence of the Fourteenth Amendment, which constrains state action through the Fifth Amendment. They also allege violations of their right to due process of law (and, by extension, their right to be free from excessive force and police brutality), which has been "clearly established" also under the Fourteenth Amendment, constraining state action through the Fifth Amendment.

(ii) objective legal reasonableness

In determining whether a supervisor claiming qualified immunity should be held liable under section 1983, the inquiry as to legal objectiveness is intimately tied to whether or not it was clearly established that the supervisor would be liable for constitutional violations perpetrated by such subordinates in that context. Camilo-Robles v. Hoyos, 151 F.3d at 6.

The First Circuit Court of Appeals has already held that it is "clearly established" that a reasonable police supervisor or superintendent would understand that he could be held liable for failing to identify and actively prevent police officers' potentially and demonstrably dangerous behavior. See Díaz v. Díaz-Martínez, 112 F.3d at 4. Therein, the

CIVIL 97-2481 (SEC) (JA)                           4

appeals court upheld the lower court's determination that the police officials were not entitled to qualified immunity, based in part, on the fact that the defendants —among them, present defendant Pedro Toledo— had the authority and responsibility for supervising, training, instructing, disciplining, controlling and restricting their subordinates' conduct. Díaz v. Díaz-Martínez, 112 F.3d at 5, 12-13.

Defendant Toledo was thus clearly aware of and on notice as to the legal weight and import of his allegedly deficient policy-shaping behavior. Yet, while notice may be a relevant consideration in determining supervisory liability, supervisory liability does not require a showing that the supervisor had actual knowledge of a particular officer's or a particular policy's potential for abusive behavior. See Camilo-Robles v. Hoyos, 151 F.3d at 7. A supervisor may be held liable for a subordinate's conduct and its foreseeable consequences if he would have or should have known but for his "deliberate" or "reckless or callous" indifference or willful blindness.[1] Id. (quoting Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 582 (1st Cir. 1994)); Díaz v. Díaz-Martínez, 112 F.2d at 4.

An official displays reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights. Germany v. Vance, 868 F.2d 9, 18 (1st Cir. 1989). With respect to claims of supervisory liability based on improper police training and based upon the First Circuit's Díaz v. Díaz-Martínez decision, defendant Toledo knew and should have known both that this type of operations are high-tension situations in high-crime areas. See Díaz v. Díaz-Martínez, 112 F.2d at 2. In addition, he either knew or should have known that he would

---

[1] There is no significant determinative difference between the standard of "gross negligence amounting to deliberate indifference" and the alternative standard of "reckless or callous indifference." See Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d at 92; Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989).

CIVIL 97-2481 (SEC) (JA)                                5

be held liable for constitutional violations perpetrated by his subordinates during these police department's drug interventions.

Whether or not a police official's supervision of the promulgation of all orders, rules, policies, instruction and regulations is so deficient as to constitute "deliberate indifference" is an issue to be determined by the trier of fact. Díaz v. Díaz-Martínez, 112 F.2d at 5. To demonstrate "deliberate indifference," a plaintiff must show causation by establishing (A) a grave risk of harm, (B) the defendant's knowledge, actual or constructive, of that risk, and (C) his failure to take easily available measures to address the risk. Camilo-Robles v. Hoyos, 151 F.3d at 7; see also Manarite By & Through Manarite v. Springfield, 957 F.2d 953, 956 (1st Cir. 1992).

Under such specific circumstances, former superintendent Toledo knew or should have known that his failure to assign properly trained police officers for the intervention and to take other relevant appropriate and available measures, and thus his derogation of his official duties, could foreseeably result in violations of the constitutional and civil rights of the housing project population.

Under the current set of facts and in view of the specific factual disputes in the record, the defendants should have reasonably understood that their conduct could foreseeably jeopardize the plaintiffs' constitutional and civil rights, that they had the authority to prevent such violations, and that they failed to take obvious steps within their power to reduce or eliminate that risk. Accordingly, the defense of qualified immunity is not available to former superintendent Toledo.

Defendant Toledo's motion for protective order is denied.

In San Juan, Puerto Rico this 14th day of June, 2001.

JUSTO ARENAS
United States Magistrate Judge