IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MICAELA GUALDARRAMA, et al.,

Plaintiffs

v.                                       CIVIL 97-2481 (SEC) (JA)

MARÍA RIVERA ORTIZ, et al.,

Defendants

## OPINION AND ORDER

This matter is before the court on a renewed motion for summary judgment filed by all defendants on March 27, 2001. (Docket No. 91.) The motion contains a concise statement of material facts as to which they contend there is no genuine issue to be tried. See A.M. Capen's Co., Inc. v. American Trading & Prod. Corp., 202 F.3d 469, 472 n.2 (1st Cir.), cert. denied, 531 U.S. 823 (2000). After conducting Rule 56(f) discovery, plaintiffs filed an opposition to the motion on December 4, 2001. (Docket No. 112.)

In compliance with Local Rule 311(12), defendants submitted a statement of material facts as to which they contend there is no genuine issue to be tried.

### Defendants' Statement of Uncontested Facts

1. On October 8, 1997, a drug intervention was carried out at Jardines de Berwind residential project. (Exhibit A, Sworn Statement of Officer Gómez.)

2. During the drug intervention, plaintiffs were arrested for assaulting a police officer. (Exhibit B, Police Complaint.)

9. Prior to the drug intervention a police officer performing a look out was able to ascertain that drugs were being sold at Jardines de Berwing and several vehicles that came out of the complex were stopped and the drivers arrested after drugs were found in their possession. (Exhibit G.)

10. Defendant Víctor Marrero had one administrative complaint filed against him prior to the October 8 incident. (Exhibit D, Administrative Record of defendant Marrero.)

CIVIL 97-2481 (SEC) (JA)                    2

11. Defendant María Rivera has no complaints against her prior to the incident related to this case. (Exhibit E, Administrative record fo defendant Rivera.)

14. Plaintiffs assaulted Agent María Rivera during a drug intervention at Jardines de Berwind. (Exhibit B, Police Complaint; Exhibit A, Sworn Statement of Officer Gómez.)

15. Agent María Rivera placed both plaintiffs under arrest. (Exhibit A, Sworn Statement of Officer Gómez; Exhibit F, Sworn Statement of defendant Rivera.)

16. Agent Víctor Marrero did not arrest them. (Exhibt A, Sworn Statement of Officer Gómez; Exhibit F, Sworn Statement of defendant Rivera.)

17. During a preliminary hearing before a local court, the judge found probable cause to charge plaintiff with assaulting an officer. (Exhibit B.)

18. Agent María Rivera and Agent Víctor Marrero are both from the Tactical Operations Unit of the Police Department of Puerto Rico. (Exhibit F, Sworn Statement of Rivera, ¶ 1.)

19. On October 8, 1997, María Rivera and Víctor Marrero (both from the Tactical Operations Unit of the Police Department) were part of a drug intervention carried out at Jardines de Berwind residential housing project.

20. Police Officer María Rivera was given the duty to stay at the main entrance of Jardines de Berwind. (Exhibit F, Sworn Statement of defendant Rivera.)

21. While standing at the entrance, Micaela Gualdarrama came over and started shouting obscenities. (Exhibit F, Sworn Statement of defendant Rivera.)

22. Defendant Rivera told her "avoid getting into trouble." (Exhibit F, Sworn Statement of defendant Rivera.)

23. Plaintiff backed out shouting more obscenities and came back with more people. (Exhibit F, Sworn Statement of defendant Rivera.)

24. Defendant Rivera approached them and plaintiffs Gualdarrama and Roldán attacked defendant Rivera. (Exhibit F, Sworn Statement of defendant Rivera.)

25. Someone, who later turned out to be the daughter of Micaela Gualdarrama, held her left arm. (Exhibit A, Sworn Statement of Officer Gómez; Exhibit F, Sworn Statement of defendant Rivera.)

CIVIL 97-2481 (SEC) (JA)                3

26. She turned around to look, lost her balance and fell with her left knee on the floor on top of Reina Roldán. (Exhibit A, Sworn Statement of Officer Gómez; Exhibit F, Sworn Statement of defendant Rivera.)

27. The person who held her left arm started to struggle with her while plaintiff Micaela Gualdarrama hit her in the head, neck and right shoulder and tried to take the gun from defendant Rivera. (Exhibit A, Sworn Statement of Officer Gómez; Exhibit F, Sworn Statement of defendant Rivera.)

28. At that moment, Agent Víctor Marrero intervened by pushing off with his baton Micaela Gualdarrama who was on top of María Rivera's back. (Exhibit A, Sworn Statement of Officer Gómez; Exhibit F, Sworn Statement of defendant Rivera.)

29. It left a mark, the shape of the baton on Micaela Gualdarrama's back. (Exhibit F, Sworn Statement of defendant Rivera.)

30. Micaela Gualdarrama and Reina Roldán were handcuffed by María Rivera and taken to the Division of Tactical Operations in San Juan. (Exhibit F, Sworn Statement fo defendant Rivera.)

Docket No. 91, Defendants' Statement of Uncontested Facts.

I make reference to what should be plaintiffs' statement of the material facts as to which it is contended that there exists a genuine issue to be tried. Many facts are left out either because they are statements of conclusions, or because plaintiffs have presented a statement of facts which they contend are not in controversy, when they are required to present a counter-statement, a statement of the material facts as to which it is contended that there exists a genuine issue to be tried. See Velázquez Casillas v. Forest Lab., Inc., 90 F. Supp. 2d 161, 163 (D.P.R. 2000); Ruiz v. Caribbean Rest., Inc., 54 F. Supp. 2d 97, 101-02 (D.P.R. 1999); Pagán de Jesús v. Toledo Dávila, 184 F.R.D. 24, 25 (D.P.R. 1999).

### Plaintiffs' Statement of Facts

a. The sergeant in charge of the operation conducted at Jardines de Berwind was Sergeant Walbert García. (Exhibit I, Deposition of María Rivera at 61, 64; Exhibits IX, X and XI, Sworn statement and declarations of Víctor Marrero; Exhibit X, Sworn Statement of Walbert García.)

c. The Procedure and Orders of Superintendent Pedro Toledo came as General Orders. (Exhibit III, Deposition of Víctor Marrero at 22-23.)

CIVIL 97-2481 (SEC) (JA)                    4

    d. There was a General Order regarding the training of policemen at the Tactical Operations Unit. The officer who ordered the training was Superintendent Pedro Toledo. (Exhibit IV, Víctor Marrero's answer to Interrogatory #10 (4).)

    f. It was Agent María Rivera's first residential intervention with the Drugs and Narcotics Division. (Exhibit I, María Rivera's Deposition at 55.)

    g. María Rivera and Víctor Marrero did not receive any special training in order to deal in high tension situations with women and children. (Exhibit I, María Rivera's Deposition at 68-69 and Exhibit V, Basic Training in Tactical Operations Schedule.)

    h. Sargent Walberto García prepared the arrest report and filed the accusation. (See Exhibits VI and VII.)

    i. The case was consulted with district attorney Elí López who determined that there was no cause for arrest or charges. (See Exhibit VIII; Exhibit I, at 89-90, 95-97; Exhibit II, at 56-60, and Exhibit X.)

    m. Sargent Walberto García, was informed of the situation by the plaintiff, Micaela Gualdarrama, who complained to him of the defendant's actions towards her and her daughter, a minor. (See Exhibit II, Deposition of Michaela Gualdarrama at 26-32.)

    o. Both plaintiffs were innocent bystanders observing the police invasion taking place at "Jardines Berwind" residential housing project, who were violently frisked, hit with the baton and bruised by defendants Rivera and Marrero while Sargent García looked the other way. (See Exhibit VII.)

    r. Nowhere in the Basic Training Program for Tactical Operations does the Police Department of Puerto Rico provide training for Agents in situations of high tension, incidence of criminality, riots and dealing with women and children. (See Exhibit V.)

    s. The Basic Training Program for the Tactical Operation Unit consisted of one week program. It provides two hours of lessons for Agents dealing with riots. (See Exhibit V. The new and actual training program consists fo two week training.)

    w. Only María Rivera and Víctor Marrero were dressed in uniform during the drug operative at Jardines de Berwind. (Exhibit XX, at 64 ane 65 of Deposition of María Rivera.)

    z. The only special training received by Agent María Rivera, to belong to that special Tactical Operations Unit was the same as other agents. (Exhibit XXI.)

    aa. Agent Marrero had a previous administrative complaint <u>for instigating a criminal procedure against a minor</u>. (Exhibit XXII, at 35, deposition of Víctor

CIVIL 97-2481 (SEC) (JA)                              5

      Marrero.)  Such complaint is not stated in Agent Marrero personal history document dated January 13, 2000.  (Exhibit XV.)

      gg. Superintendent Pedro Toledo, at the time of the incident, was an active participant in the selection of personnel to belong in the Tactical Operations Unit. (Exhibit XXV - General Order 73-4 "Normas y Procedimientos para la Unidad de Operaciones Tácticas ," 4.54(c).)

      ii. There was no established written manual or procedure to conduct police interventions in a Public Housing Project.  (Exhibit XXVI, Deposition of Pedro Toledo at 11-12.)

Docket No. 111, Plaintiffs' Statement of Facts.

      With the above in mind, taking into consideration the statement of facts submitted by plaintiffs which are in part conclusory in nature rather than factual, the statement of material facts which are not related above but which belong in movant's version rather than in non-movant's version, and discovery having been concluded, it is clear that there are insufficient facts with which to proceed to trial as to co-defendant Pedro Toledo on the issue of supervisory liability.  I therefore adopt by reference my opinion and order of August 25, 2000 (Docket No. 78) and add only items which I consider essential *mutatis mutandis*.

      While generically, the superintendent may have been put on notice that the take over of public housing projects would create scenarios similar to the one which occurred on October 8, 1996.  It is also true that whatever inaction Toledo is charged with bears no relation to any damages which plaintiffs may have suffered assuming they prevail at trial as to the remaining co-defendants.  Co-defendant María Rivera (this was her first drug operation) had no administrative or disciplinary proceedings against her prior to the incident although she had one after.  Víctor Marrero Barrios had one administrative complaint against him, for instigating a criminal proceeding against a minor.  These bare facts, considered as a triggering factor for imposing supervisory liability under section 1983, do not invite further consideration.  Notice is a salient consideration in determining the

CIVIL 97-2481 (SEC) (JA)                            6

existence of supervisory liability. See Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998), cert. denied, 525 U.S. 1105 (1999); cf. Barreto-Rivera v. Medina Vargas, 168 F.3d 42, 49 (1st Cir. 1999); Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 564-65 (1st Cir. 1989). There was veritably no notice of any propensity to violence by either of the putatively offending officers. Toledo's action or inaction prior to or during the incident of October 8 must have been affirmatively linked to the behavior of those officers, in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence of the supervisor amounting to deliberate indifference. See Muñoz v. Toledo Dávila, 954 F. Supp. 455, 458 (D.P.R. 1997) (quoting Hegarty v. Somerset County, 53 F.3d 1367, 1379 (1st Cir. ), cert. denied sub nom. Hegarty v. Wright, 516 U.S. 1029 (1995)). That conclusion can not be reached from the facts submitted in plaintiff's Rule 311(12) statement of material facts as to which it is contended there is a genuine issue to be tried, this notwithstanding Toledo's being responsible for establishing all policies and procedures of the Police Department, and ultimately being responsible for the supervision of all of the officers under his command. To proffer that the police officers were inadequately, improperly, or poorly trained without any point of reference is, again, conclusory in nature. Plaintiffs argue that the only training provided to personnel that participated in the interventions in public housing areas was received at the Police Academy. They also argue that the Tactical Operations Unit was incorporated in the takeover program without further training in dealing with riots, large crowds, demonstrations, and groups of women and children. Again, Toledo's affirmative connection to the arguable civil rights violation is lacking, as well as any causal relationship because an alleged lack of training and the injuries suffered. Plaintiffs have not demonstrated a triable issue in relation to Toledo's affirmative connection to the injuries, either under the standard of Rule 56, or under the doctrine of qualified immunity.

CIVIL 97-2481 (SEC) (JA)                                7

Therefore, the motion for summary judgment of March 27, 2001 (Docket No. 91) in relation to Pedro Toledo Dávila is granted and the case is dismissed as to him.

Sergeant Walbert García was one of the supervisors of operations during the October 8, 1996 action. He was María Rivera's and Victor Marrero's immediate supervisor. He filed a complaint against Micaela Gualdarrama on October 18, 1996 based upon the incident of October 8, 1996. He was not present at the immediate place where the incident subject of the complaint occurred (the alleged assault on Agent María Rivera) but rather was told about the incident by Agent Víctor Marrero, who saw part of and participated in the altercation. Micaela Gualdarrama apparently complained to Sergeant García immediately after the incident. Plaintiff's statement of facts paragraph "o" notes that while officers Rivera and Marrero bruised plaintiffs and hit them with a baton, Sergeant García looked the other way, making reference to the record where this evidence appears. However, such evidence does not appear at the pages noted in the designation, (nor the pages before and after those designated), nor can an inference be made that Sergeant looked the other way during the incident, based on a reading of the designation. Cf. Pardo Hernández v. Citibank, N.A., 141 F. Supp. 2d 241, 245-46 (D.P.R. 2001). Sergeant Walberto García had two previous complaints of false arrest in his personal record report. Those complaints', however, have no bearing on the issues raised in the cause of action against him.

I adopt by reference my opinion and order of August 25, 2000 in relation to the issue of qualified immunity. Either Sergeant García engaged in a practice which did lead to a civil rights violation, or he acted with deliberate indifference to the constitutional rights of plaintiffs. He did neither. See Díaz v. Martínez, 112 F.3d 1, 4 (1st Cir. 1997). That one of the plaintiffs complained to him of the actions of arresting officers after the incident does not add weight to plaintiffs' argument. That he authorized a complaint

CIVIL 97-2481 (SEC) (JA)                       8

against Micaela Gualdarrama based upon information he received, and that she was arrested based upon such information is insufficient to attribute to him liability. In relation to the other two co-defendants, it is clear from the conflicting 311(12) statements that there are genuine issues of material fact which require a trial to resolve.

In view of the above, the motion for summary judgment is GRANTED in part, and the complaint is dismissed as to Pedro Toledo and Walberto García. The motion is DENIED as to María Rivera and Víctor Marrero.

Trial is set for January 24, 2002 at 9:30.

In San Juan, Puerto Rico, this 13th day of December, 2001.

JUSTO ARENAS
United States Magistrate Judge