ESTADO LIBRE ASOCIADO DE PUERTO RICO
PAG. 01                      TRIBUNAL DE PRIMERA INSTANCIA
                              SALA SUPERIOR DE SAN JUAN

ESTADOS UNIDOS DE AMERICA,               ]
EL PRESIDENTE DE LOS ESTADOS UNIDOS ]  SS:
ESTADO LIBRE ASOCIADO DE P.R.            ]

NEVAREZ BARCELO, MAYNA                          CASO NUM:  K DP1998-0051
              DEMANDANTE                             SALON:   0503
                 VS.
TOLEDO, PEDRO                              DAÑOS Y PERJUICIOS
             DEMANDADO                     CAUSAL O DELITO

LIC. ALGARIN ECHANDI FELIPE A
DEPARTAMENTO DE JUSTICIA
PO BOX 9020192
SAN JUAN PR                    00902-0192

                    NOTIFICACION DE SENTENCIA

      EL SECRETARIO QUE SUSCRIBE NOTIFICA A USTED QUE ESTE TRIBUNAL HA DICTADO
SENTENCIA  EN EL CASO DE EPIGRAFE CON FECHA 12 DE JULIO DE 2000     , QUE HA
SIDO DEBIDAMENTE  REGISTRADA Y  ARCHIVADA EN LOS AUTOS DE ESTE CASO, DONDE
PODRA USTED ENTERARSE DETALLADAMENTE DE LOS TERMINOS DE LA MISMA.

      Y, SIENDO O REPRESENTANDO USTED LA PARTE PERJUDICADA POR LA SENTENCIA,
DE LA CUAL PUEDE  ESTABLECERSE  RECURSO DE  APELACION, DIRIJO A  USTED ESTA
NOTIFICACION, HABIENDO  ARCHIVADO EN LOS AUTOS DE ESTE  CASO COPIA DE ELLA
CON FECHA  DE  20 DE JULIO DE 2000     .

VARGAS HERNANDEZ ROBERTO
PO BOX 192219                       SAN JUAN, PR
                                   00919-2219

RODRIGUEZ MADRIGAL MONICA M
DEPARTAMENTO DE JUSTICIA            PO BOX 9020192
SAN JUAN PR                         00902-0192


SAN JUAN       , PUERTO RICO, A 20 DE JULIO DE 2000

                          CARMEN L. LOPEZ CRUZ
                          -----------------------------------------
                                        SECRETARIO
                    POR: G. BERDECIA
                          -----------------------------------------
                                SECRETARIO AUXILIAR

O.A.T.704-NOTIFICACION DE SENTENCIA

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| MAYNA NEVAREZ BARCELO, ET AL | CIVIL NUM.:KDP98-0051 |
| Demandantes | (503) |
| V. | SOBRE: |
| PEDRO TOLEDO, ET ALS<br>Demandados | DAÑOS Y PERJUICIOS |
| MAYNA NEVAREZ-BARCELO, ET AL<br>Demandantes | CIVIL NUM.KDP98-0072<br>(503) |
| V. | SOBRE: |
| ESTADO LIBRE ASOCIADO DE P.R.<br>ET AL | |
| Demandados | DAÑOS Y PERJUICIOS |

**DETERMINACIONES DE HECHO,**
**CONCLUSIONES DE DERECHO Y**
**SENTENCIA**

El presente caso trata en síntesis de una acción incoada bajo las disposiciones de la Ley Federal de Derechos Civiles en reclamación de daños como consecuencia de un incidente ocurrido entre dos jóvenes y varios miembros de la Unidad de Operaciones Tácticas durante la celebración de las tradicionales fiestas de la Calle San Sebastián.

La vista en su fondo en el caso de epígrafe tuvo lugar los días 20 y 21 de junio de 2000. La parte demandante estuvo representada por los Lcdos. Roberto Vargas Hernández y Ramón Humberto Vargas. El Estado Libre Asociado fue representado por el Lcdo. Felipe A. Algarín Echandi.

Por la parte demandante testificaron las jóvenes Mayna Nevárez Barceló y Suzette Lee Rodríguez Lumbano y sus respectivos padres. El Estado Libre Asociado de Puerto Rico presentó los testimonios de las mujeres policías, María E. Rivera Ortiz, Ivette L. Rondón Canales y Gemesse Vanessa Rosado.

La prueba documental considerada por el Tribunal fue toda estipulada y esta descrita en las Minutas correspondientes a las vistas. También observamos en

-2-                KDP98-0051-98-0072 (503)

detalle dos cintas videomagnetofónicas sometidas por estipulación por las partes.

Escuchada la prueba testifical a la luz de la crebilidad que nos mereció, así como de un análisis del resto de la prueba presentada y admitida, el Tribunal formula las siguientes:

### DETERMINACIONES DE HECHO

La joven Mayna Nevárez Barceló contaba con 21 años el día de los hechos descritos en la demanda y es hija única de los esposos codemandantes, Juan Oscar Nevárez y María Antonia Josefina Barceló.

La joven Suzette Lee Rodríguez Lumbano también de 21 años para la fecha de los hechos, es hija de los esposos codemandantes Pedro Rodríguez Savier y Myrna Lumbano González.

Ambas jóvenes demandantes eran estudiantes de periodismo para la fecha de los hechos. La codemandante Mayna Nevárez indicó que casualmente en días recientes en un rotativo del país había publicado un trabajo suyo sobre brutalidad policiaca contra jóvenes.

En la noche del 18 de enero de 1997 las codemandantes Mayna Nevárez y Suzette Rodríguez (de ahora en adelante Mayna y Suzette) llegaron juntas al Viejo San Juan alrededor de las 9:00 de la noche para disfrutar de las tradicionales fiestas de la Calle San Sebastián. Habían centenares de personas en el lugar.

Alrededor de las dos de la madrugada, ya del 19 de enero de 1997 se suscitó un incidente entre dos personas en la Plaza San José ubicada en la Calle San Sebastián. Ello ocasionó que las demás personas se amontonaran, formándose un motín donde se lanzaron botellas, latas, piedras, y otros objetos tanto por las personas en las calles, como por aquellos provenientes de los balcones de las casas cercanas, perturbándose la tranquilidad pública.

-3-        KDP98-0051- 98-0072 (503)

Agentes del orden público asignados al lugar fueron agredidos con botellas y otros objetos. Para controlar la situación, miembros de la Unidad de Operaciones Tácticas fueron llamados y se personaron al lugar comenzando a dispersar las personas ubicándose en escuadras (formaciones creando un cordón de efectivos) frente a las Calles San Sebastián y Plaza del Mercado.

Mayna, quien para dicha fecha era estudiante y estaba trabajando a tiempo parcial para el Nuevo Día, decidió no moverse según fue instruída por un miembro del orden público.   En vez de desalojar el área, como instruída, produjo una libreta y le solicitó  al oficial le diera su nombre y número de placa. Éste no lo hizo.

Mayna continuó solicitando nombres y números de placas a distintos oficiales. Estos estaban en la formación, según instruídos por su supervisor (Sargento Juan A. Gutiérrez) haciendo la labor encomendada, tratando de controlar la situación y restablecer el orden.

La  Unidad  de  Operaciones  Tácticas  tenía  otra obligación.  Era también necesario desalojar las calles para abrirle paso a las brigadas del Municipio de San Juan que habían sido llamados para recoger los vidrios y basura producto del motín que se había suscitado para protección de los cuidadanos.

La Unidad de Operaciones Tácticas tardó alrededor de una hora en controlar la situación moviéndose en escuadras, dispersando a las personas por las distintas calles del Viejo San Juan.   Durante todo este tiempo, Mayna insistentemente solicitaba los nombres y números de placas de los oficiales.

Mayna entorpeció las labores de los miembros de la fuerza. Primero, insistió en obtener, en ese momento, los nombres y números de placa de los oficiales; cuando éstos por instrucciones específicas están impedidos de distraerse

cuando están en formación pues ello puede ocasionar poner en
riesgo un operativo, sus vidas, ó las de otros cuidadanos.
En segundo término, incitó a las personas que estaban allí
con ánimos sumamente exaltados y muchos en estado de
embriaguez ante el motín que se estaba intentando controlar,
a cruzar la línea formada por los policías indicando que las
calles eran libres para transitar, que todos eran cuidadanos
y pagaban contribuciones por lo cual tenían derecho a así
hacerlo.

Cada vez que Mayna le pedía a un oficial varón su
nombre y número de placa, el Sargento tenía que sustituirlo
por una mujer policía, según el procedimiento para evitar el
contacto de la joven con un oficial varón.  Ello ocasionó
inconvenientes en mantener la formación y entorpecía la
labor de los miembros de la Unidad.

Los nombres y números de placa no eran visibles, pues
los oficiales vestían sobre sus uniformes el equipo de
seguridad consistente en un chaleco a prueba de balas.

Mayna solicitaba la información a los oficiales de
forma agresiva e insistente, haciendo contacto físico con su
dedo índice al pecho del oficial al que le solicitaba su
nombre y número de placa.

Luego de alrededor de una hora, Mayna indicó que su
interés era llegar hasta su automóvil para retirarse a su
hogar. El Sargento Gutiérrez dió orden para que se le
permitiera entonces a ella y a Suzette cruzar la línea de
formación. Pasada la línea, Mayna en vez de retirarse a su
hogar inmediatamente, se ubicó frente al Sargento Gutiérrez
y de forma agresiva haciendo nuevamente contacto con su dedo
índice al pecho del Sargento le solicitó su nombre y número
de placa.  Al éste no darle la información y solicitarle que
no provocase ninguna otra situación, Mayna le profirió
palabras soeces y el Sargento dió instrucciones a una de las
mujeres policías para que pusieran a la joven bajo arresto.

-5-        KDP98-0051- 98-0072 (503)

La codemandante Suzette Rodríguez quien también intentó cruzar la línea de efectivos e insistía en tomar nombres y número de placas de éstos, fue intervenida por mujeres policías pero no fue arrestada en ese momento ya que se logró controlarla mediante el diálago.

Mayna por su parte resistió el arresto. La cinta videomagnetofónica tomada por un vecino del lugar y sometida por la propia parte demandante es prueba directa de ello. Por la contemporaneidad con los hechos es incalculable su valor probatorio.

Ninguna de las mujeres policías que intervino con Mayna le profirió golpes, ni con los puños, ni con sus rótenes ni con patadas como declaró la codemandante.

Del video surge claramente que Mayna resistió el arresto insistentemente agarrándose de objetos para evitar ser esposada; dejándose caer al suelo en varias ocasiones; tirando patadas y forcejeándo. Inclusive surge claramente cuando le arrebata a una de las mujeres policías su rotén, quién tiene que maniobrar para recuperarlo.

También se percibe cuando una de las veces en que Mayna se tira al suelo trata con sus piernas de atrapar las piernas de una de las mujeres policías. Más adelante se percibe a la joven tratándose de soltar de las manos de las mujeres policías y en el forcejeo, cae al suelo y provoca incidentalmente la caída de una de las oficiales, quien resultó lesionada en una de sus rodillas, con una cicatriz que observamos, ya que a esta fecha aún se percibe. Entendemos que fue en ese momento que se produjo la fractura de la nariz que se describe de ésta codemandante.

Del expediente médico y de las fotos sometidas en evidencia surge que Mayna reflejó hematomas de forma circular en ambos brazos (antebrazos) y área de las muñecas; guallazos en su espalda y un golpe en el área baja de la espalda, también de forma circular.

La parte demandante no presentó evidencia pericial para establecer que los hematomas fueron producto de macanazos como declaró la demandante fue el origen de sus golpes. (Véase Conclusiones de Derecho Número 21 y 22).

El origen de las marcas en el cuerpo de Mayna son consistentes con el resto de la evidencia, al tener que haber sido agarrada por los brazos y manos para intentar arrestarla. Los golpes y rallazos de su espalda son compatibles de haber sido producidos al ésta ser arrastrada por la calle por las agentes unos tres o cuatro pasos cuando ésta se tiró en una de las ocasiones de los brazos de las mujeres policías evadiendo el arresto.

Suzette intervino indebidamente con las mujeres policías. Esta le profirió palabras obscenas y en el intento de ayudar a su amiga Mayna, obstruyó la labor de las mujeres policías tratando de liberar a la arrestada. Sus leves golpes no fueron producidos tampoco por macanazos.

En la cinta video magnetofónica no se percibe a ninguna mujer policía infiriéndole golpes o macanazos a ninguna persona. Al contrario, parecen estar en calma tratando de manejar la situación haciendo uso de la mínima fuerza necesaria para practicar el arresto. Solo al principio de la cinta se puede percibir cuando una mujer policía trata, haciendo uso de su rotén, de inmobilizar a Mayna para que otra la esposara. No obstante, no lo logra.

El arresto se hizo aún más difícil por la limitación en los movimientos de las mujeres policías producido por el equipo de protección que vestían.

Luego de Mayna ser llevada al Cuartel de Puerta de Tierra, Suzette llegó y también fue puesta bajo arresto. A ambas le fueron leídas las advertencias sobre sus derechos constitucionales, aunque rehusaron firmar asintiendo ese hecho.

Al otro día ambas demandantes fueron llevadas al

Dispensario Hoare para recibir asistencia médica acompañadas de mujeres policías y de sus respectivos familiares.

Luego de determinarse causa probable por varios delitos contra las jovenes demandantes, los cargos fueron archivados por acuerdo entre el fiscal y la defensa el día del juicio.

Tanto los padres de Mayna como los de Suzette sufrieron angustias mentales al enterarse que sus hijas estaban detenidas en un cuartel de la policía y luego ante el procesamiento criminal. Éstos le brindaron a sus hijas el apoyo incondicional que se espera de padres responsables que quieren a sus hijos. No obstante ello y aunque lamentamos su situación, la realidad es que su sufrimiento no fue producto de ningún acto negligente ni culposo de miembros de la policía.

A base de las presentes Determinaciones de Hecho, formulamos las siguientes:

## CONCLUSIONES DE DERECHO

1. La presente acción es incoada bajo la Sección 1983 de la Ley Federal de Derecho Civiles, 42 US sec. 1983, et seq. La parte demandante sostiene que le violaron sus derechos constitucionales y exige resarcimiento por ello.

2. Tenemos jurisdicción concurrente con las cortes federales para juzgar litigios surgidos al amparo de la Ley Federal de Derechos Civiles, 42 USC sec. 1983. **Acevedo v. Srio. Servicios Sociales**, 112 DPR 256, 259-260 (1982) reiterado en **Leyva y otros** v **Policias Aristud, Lacen y otros**, 93 JTS 5, Opinión de 19 de enero de 1993.

3. No obstante ello, el Estado no es considerado "persona" al amparo de la Sección 1983 y no procede demandar en su contra bajo este estatuto. **Will v. Michigan Dept. of State Police**, 491 OS 58, 64, 105 L.Ed. 2d 45 (1989). **Howlett v. Rose**, 496 US 356, 110 L. Ed. 2d., 332, 340 (1990).

4. Tampoco procede una acción bajo la Sección 1983

contra un funcionario estatal que es demandado en su carácter oficial. **Leyva v. Aristud**, supra a la página 10310.

5.   Por otro lado, los tribunales deben conceder a las partes lo que en derecho procede, aunque no haya sido perfectamente solicitado. **Soto López v. Colón Méndez**, 97 JTS 44.   El defecto en el remedio solicitado no es impedimento para conceder el remedio que procede. **Magriz v. DACO**, 97 JTS 55.

6.   El Artículo 1802 del Código Civil, 31 LPRA Sec. 5141, requiere de la concurrencia de tres factores para que proceda una acción de daños y perjuicios.

a.   Que efectivamente se haya sufrido un daño.

b.   Que haya un nexo causal entre el daño sufrido y la acción u omisión de otra persona.

c.   Que en el acto u omisión intervenga culpa o negligencia. **Sociedad de Gananciales v. González Padín, Co.,Inc**, 117 DPR 94 (1986); **Jiménez v. Peregrina Espinet**, 112 DPR 700, 703 (1982).

7.   Al establecer la responsabilidad vicaria, el Artículo 1803 del Código Civil de Puerto Rico, (31 L.P.R.A., Sec. 5142), nos dice en su parte pertinente que:

--"La obligación que impone la sección anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder....

--...El estado es responsable en este concepto en las mismas circunstancias y condiciones que sería responsable un cuidadano particular.

--...La responsabilidad de que trata esta sección cesará cuando las personas en ella mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño".
(Enfasis suplido).

8.   En Puerto Rico prevalece la doctrina de la inmunidad del Estado. **Galarza Soto v. E.L.A.**, 109 DPR 179 (1979).

9.   Mediante la Ley 104 de 29 de junio de 1955, según enmendada (32 LPRA, Sec. 3077, et seq.); el Estado renunció

parcialmente a su inmunidad de soberano y presentó su consentimiento limitado a ser demandado en daños y perjuicios ocasionados a una persona o propiedad por la culpa o negligencia de un funcionario, agente o empleado suyo.  Artículo 2 de Ley 104, **supra**, (32 LPRA, sec. 3077) **Rivera de Vincenti v. E.L.A.**, 108 DPR 64 (1978); **Piñeiro Manzano v. ELA**, 102 DPR 795 (1974).

10.   La negligencia de un funcionario, agente o empleado público, al igual que en otros casos de responsabilidad vicaria debe reputarse como un costo administrativo del gobierno, el cual se distribuye mediante el cobro y pago de contribuciones. **Torres v. Castillo Alicea**, 111 DPR 792 (1981).

11.   El Artículo 6 de la Ley 104, **supra**, (32 LPRA Sec. 3081) señala específicamente las acciones no autorizadas por el Estado, esto es, las circunstancias en que no se autoriza demandarlo.  Véase además **Negrón v. Orozco Rivera**, 113 DPR 712 (1983); **Alberio Quiñones v. ELA**, 90 DPR 812 (1964), **Báez Vega v. ELA**, 87 DPR 67, (1963).

12.   Nuestro Tribunal ha definido el concepto de negligencia como la falta del debido cuidado que a la vez consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias.  La necesidad de una convivencia social ordenada impone un deber general de corrección y de prudencia en relación con los demás ciudadanos y el acto es ilícito en el sentido extracontractual cuando viola deberes generales de corrección social o de conducta correcta, deberes que no están escritos en los códigos, pero, que representan el presupuesto mínimo sobre entendido en el orden social. **Ramos v. Carlo** 85 DPR 353 (1962); **Reyes v. Sucesión Sánchez Soto**, 98 DPR 305 (1970).

13.   Si en el acto generador de daño prepondera el

-10-          KDP98-0051 - 98-0072 (503)

elemento de negligencia sobre el criminal, el Estado responde por los daños causados por sus empleados. **Galarza Soto v. ELA**, *supra*; **Torres v. Castillo Alicea**, *supra*.

14. En **Leyva et al v. Policías Aristud, et al**, op. de 19 de enero de 1993, 93 JTS 5, al indicar los elementos necesarios para prevalecer en una acción de daños y perjuicios como resultado de brutalidad policíaca y violación de derechos civiles, nuestro Tribunal Supremo indicó:

> --"Primero, tiene que probar que la persona que le causó el daño era agente, funcionario o empleado del Estado y que estaba actuando en su capacidad oficial, al momento de causarle el daño. Hay que establecer 'suficiente nexo jurídico entre la actuación negligente del policía y los intereses del Estado, por razón del ejercicio de funciones expresas o implícitas.'

> --"Segundo, es necesario que el demandante pruebe que ese agente, funcionario o empleado actuó dentro del marco de su función.

> --"En tercer lugar, el demandante tiene que probar que la actuación del empleado del E.L.A. fue negligente, y no intencional."

> --"Por 'ultimo, hay que demostrar relación causal entre la conducta culposa y el daño producido.

> --Cumplidos estos requisitos el ELA está sujeto a responsabilidad civil en cualquier de los siguientes supuestos:

>     (1) Cuando el empleado, agente o funcionario causa daño por su exclusiva culpa o negligencia, mientras desempeña sus funciones y actúa en su capacidad oficial;

>     (2) Cuando el empleado, agente o funcionario causa daño mientras desempeña sus funciones y actua en su capacidad oficial por una actuación preponderadamente negligente aún cuando dicha conducta tenga algunos elementos intencionales;

>     (3) Cuando, a pesar de que el daño fue directamente producido por un acto intencional de los cuales no responde el Estado, hubo otros actos negligentes separados de co-causantes del daño por los cuales sí debe responder el Estado;

>     (4) Cuando el Estado a través de sus agentes es negligente por omisión al incumplir con un deber impuesto por las leyes y la Constitución".

Un arresto legal no se convierte en ilegal simplemente porque el imputado no sea hallado culpable. Se requiere una

conducta en extremo negligente o criminal y maliciosa. **Toledo Maldonado v. Cartagena Ortiz**, 92 JTS 173. (citas omitidas).

15.   Un arresto es el acto de poner a una persona bajo custodia en los casos y del modo que la ley autoriza por un funcionario del orden público o persona particular. Se logra por medio de la restricción efectiva de la libertad de la persona o sometiendo a dicha persona a la custodia de un funcionario.  Regla 4 de Procedimiento Criminal. 34 LPRA Ap. II, Regla 4 en su parte pertinente.

16.   Un funcionario del orden público puede realizar un arresto sin previa orden:

(a)  cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia.  (En cuyo caso el arresto se realiza inmediatamente o dentro de un término razonable después de la comisión del delito).

(b) cuando la persona arrestada hubiese cometido un delito grave, aunque no en su presencia.

(c) cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (felony), independienatemente de que dicho delito se hubiere cometido o no en realidad.   34 LPRA Ap. II, Regla 11 de Procedimiento Criminal.

17.   La jurisprudencia enmarca el concepto de "motivo fundado" en la posesión de aquella información y conocimiento que lleven a una persona ordinaria y prudente a creer que el arrestado ha cometido delito. **Cepero Rivera v. Tribunal Superior**, 93 DPR 245 (1966). La conducta del funcionario público se juzga pues en orden al criterio de la persona prudente y razonable, por lo que es necesario considerar las circunstancias específicas del arresto para determinar su validez. **Pueblo v. Alcalá Fernández**, 109 DPR 326, 331- 332 (1980).

18.    Una de las excepciones de la obligación de la persona que va a efectuar el arresto de informar a la persona que va a ser arrestada de su intención de arrestarla, de la causa del arresto y de su autoridad para hacerlo en ese mismo momento es cuando la persona a ser arrestada ofrece resistencia antes de que el funcionario pudiere informarle. Regla 13 de Procedimiento Criminal, 34 LPRA Ap. II, Regla 13.

19.    Existen circunstancias en que al efectuarse el arresto está facultado el funcionario para usar todos los medios necesarios para efectuar el arresto, siendo una de ellas cuando se resistiere violentamente la persona a ser arrestada. Regla 16 de Procedimiento Criminal 34 LPRA, Ap. II, Regla 16.

20.    En **Toro Lugo** v. **Ortiz Martínez**, 113 DPR 56 (1982) seguido en **Cárdenas Maxán v. Rodríguez Rodríguez**, 125 DPR 702, 710 (1990) cuando el Tribunal Supremo tuvo la oportunidad de aplicar la doctrina de causa eficiente, expresó que "cuando es evidente la desproporción entre culpas causantes de un daño, la mayor absorbe totalmente la otra y excluye la aplicación de la norma de negligencia comparada".

21.    Cuando pareciere que una parte, pudiendo haber ofrecido una prueba más firme y satisfactoria, ofrece una más débil y menos satisfactoria, la evidencia ofrecida deberá mirarse con sospecha. Regla 10(G) de Evidencia.

22.    Conforme la presunción número 6 "Toda evidencia superior habría de ser adversa a la presentación de otra inferior". Regla 16 de Evidencia.

23.    Tomamos conocimiento judicial a iniciativa propia, conforme la Regla 11 de Evidencia por ser de conocimiento general dentro de nuestra jurisdicción territorial, que las Fiestas de la Calle San Sebastián son un evento anual de gran popularidad y aceptación donde acuden miles de personas

en la mayoría jóvenes y en donde se festeja hasta alta horas de la madrugada y se consumen bebidas alcohólicas por la gran mayoría de sus asistentes.   Ello ocasiona a veces situaciones donde se dificulta controlar el orden y mantener la paz pública.

Hemos analizado de forma minunciosa las disposiciones legales reseñadas en los párrafos precedentes, a la luz de los hechos que este Tribunal encontró probados en la vista en su fondo.   De los hechos probados, se colige con meridiana claridad que en el presente caso estamos ante la ocurrencia de un suceso, el cual probablemente se hubiera evitado si las codemandantes Mayna y Suzette hubieran reconocido, como buenas cuidadanas, la autoridad de la Policía de Puerto Rico en su intervención legítima con una situación contraria a ley; en este caso, un motín que ponía en peligro la seguridad de los efectivos asignados al área frente a la Plaza San José y de los cuidadanos participantes de las actividades de las Fiestas de la Calle San Sebastián.

Entendemos que la conducta agresiva, desafiante e insistente con los agentes del orden público desplegados por las codemandantes Mayna Nevárez y Suzette Rodríguez fue lo que motivó sus arrestos y posteriores encausamientos criminales.

No obstante a lo anterior, nos parece sumamente preocupante y alarmante que miembros de la Unidad de Operaciones Tácticas destruyeran la libreta, que presumimos era de la propiedad de la codemandante Mayna Névarez, la noche de los hechos, según surge de la cinta videomagnetofónica sometida en evidencia.

Dicha conducta es altamente reprochable de cualquier cuidadano, pero más aún de aquellos llamados a respetar los derechos de los cuidadanos y hacer cumplir las leyes de nuestro país. Sin embargo, no se reclamaron daños por este concepto.

Nos mereció entero crédito los testimonios vertidos, por las agentes María E. Rivera Ortiz, Ivette L. Rondón Canales y Gemesse Vanessa Rosado Torres en torno a la forma y manera en que ocurrió el incidente que da lugar a la Demanda que nos ocupa. Las lesiones sufridas por ambas codemandantes fueron ocasionadas en el forcejeo y resistencia a la autoridad y posterior arresto.

Por otro lado, el posterior archivo de los cargos criminales contra las codemandantes en el juicio criminal en su contra "per se", no convierte en ilegal un arresto por "motivos fundados" a tenor con la Regla 11 de Procedimiento Criminal. La conducta de los agentes aquí aludidos no fue negligente, y mucho menos criminal o maliciosa. Por lo contrario, fue una responsable y cónsona a sus deberes como funcionarios del orden público.

Si bien es cierto que las agentes arrastraron a la codemandante unos tres o cuatro pies por la calle, cuya actuación calificamos como descuidada; no es menos cierto que ello se debió al la codemandante caer al suelo provocada por su propia resistencia y forcejeo. Ante la desproporción de culpas, no responde la parte demandada. **Cárdenas Maxán v. Rodríguez**, supra.

En consecuencia, los daños sufridos por las aquí codemandantes fueron producto directo de su reprobable conducta ante aquellos que tienen la difícil y riesgosa misión de velar por la seguridad y el orden público en nuestra sociedad.

La intervención de los agentes del orden público en este caso fue una totalmente justificada, a tenor con la actuaciones de las aquí codemandantes y a la luz de la totalidad de las circunstancias.

El Tribunal dictará Sentencia de conformidad a las anteriores Determinaciones de Hecho y Conclusiones de Derecho.

-15-        KDP98-0051-98-0072 (503)

## SENTENCIA

Vistas las anteriores Determinaciones de Hecho y Conclusiones de Derecho, las cuales se incorporan y se hacen formar parte de la presente, el Tribunal dicta Sentencia desestimando la presente causa de acción.

Se impone a la parte demandante, las costas y gastos del presente litigio.

REGISTRESE Y NOTIFIQUESE.

En San Juan, Puerto Rico, a 12 de julio de 2000.

MARIA DEL CARMEN GOMEZ CORDOVA
JUEZ SUPERIOR